IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Brett Howard, ) | |
| ) | C/A No. 1:18-2234-TMC |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Warden of Lieber Correctional ) | |
| Institution, ) | |
| ) | |
| Respondent. ) | |

This matter is before the court on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner Brett Howard. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2), D.S.C., all pre-trial proceedings were referred to a magistrate judge.[1] Magistrate Judge Shiva V. Hodges filed a Report and Recommendation ("Report") recommending Respondent's Summary Judgment Motion (ECF No. 15) be granted. (ECF No. 26). The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report. *Id.* at 25. Petitioner has timely filed objections to the Report. (ECF No. 29).

The court is obligated to conduct a de novo review of every portion of the magistrate judge's report to which objections have been filed. *Id.* However, the court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the

---

[1] A magistrate judge makes only a recommendation to the court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

magistrate judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## I. Background/Procedural History

On the evening of December 11, 2009, Petitioner was at Missy's Lounge, a nightclub or pool hall in Jasper County, South Carolina. (ECF No. 14-1 at 156, 211-213). Petitioner had a .38 revolver with him and told several people that he was "security." *Id.* at 211-13, 218, 228, 230, 242. During the evening, he approached Woody Brantley ("Brantley") on two separate occasions and interjected himself into Brantley's conversations with other persons asking if everything was okay. *Id.* at 213, 227-28. Petitioner approached Brantley a third time calling Brantley a racist based on a conversation Brantley was having with a third party. *Id.* at 240-42, 253-54. Petitioner then pointed his gun at Brantley, walked towards him, and pulled the trigger two or three times, but the gun did not fire. *Id.* at 242, 254-55. When Petitioner was approximately three feet from Brantley, he again fired the gun. *Id.* at 206, 243, 255. This time the gun fired killing Brantley. *Id.* A witness testified that he saw Petitioner leave the bar with an astonished look on his face after the shooting. *Id.* at 214.

In January 2010, Petitioner was indicted for murder and possession of a weapon during a violent crime. *Id.* at 509-12. Attorneys Robert Hughes and Stephen Plexico represented Petitioner at a jury trial held May 14-16, 2012, before state Circuit Court Judge Perry M. Buckner. *Id.* at 3. The jury found Petitioner guilty of both charges, *id.* at 408, and Judge Buckner sentenced Petitioner to forty years for the murder conviction and five years for the weapon conviction, to run consecutively, *id.* at 425.

Petitioner appealed his convictions to the South Carolina Court of Appeals. *Id.* at 428-37. On appeal, Petitioner was represented by Appellate Defender Katherine H. Hudgins. *Id.* at 428.

Hudgins filed a motion to be relieved, *id.* at 435, and a final *Anders*[2] brief, raising the following issue:

> Did the trial judge err in charging the jury that inferred malice may also arise when the deed is done with a deadly weapon when in, closing argument, Appellant argued that the shooting was an accident?

*Id.* at 430. On June 11, 2014, the Court of Appeals dismissed the appeal in an unpublished decision. *Id.* at 438-39. The remittitur was sent down on June 27, 2014. (ECF No. 14-2).

On July 25, 2014, Petitioner filed an application for post-conviction relief ("PCR"), alleging ineffective assistance of appellate and trial counsel. (ECF No. 14-1 at 440-45). Petitioner was represented by attorney James K. Falk. *Id.* at 453-501. On October 19, 2016, an evidentiary hearing was held before state Circuit Court Judge Michael G. Nettles. *Id.* at 450. On January 31, 2017, Judge Nettles denied Petitioner PCR. *Id.* at 504-508.

Petitioner appealed the denial of his PCR application, and Appellate Defender Lara M. Caudy represented him on appeal. (ECF No. 14-3). On September 20, 2017, Caudy filed a petition for writ of certiorari in the South Carolina Supreme Court, raising the following issue:

> Whether Petitioner's Sixth and Fourteenth Amendment rights to the effective assistance of counsel were violated when trial counsel failed to object to the jury instruction that malice may be inferred from the use of a deadly weapon pursuant to *State v. Belcher*, 385 S.C. 597, 610, 685 S.E.2d 802, 809 (2009) when, in closing argument, Petitioner extensively argued the shooting was an accident, and where Petitioner was prejudiced because if counsel had properly objected, the outcome of his trial would have been different where there was no evidence Petitioner shot the decedent with malice?

*Id.* at 3. On May 24, 2018, the South Carolina Supreme Court denied the petition (ECF No. 14-5), and the remittitur was sent down on June 11, 2018 (ECF No. 14-6).

On August 7, 2018, Petitioner filed this habeas petition, raising the following grounds for relief:

---

[2]*Anders v. California*, 386 U.S. 738, 744 (1967).

**Ground One:** The trial judge erred in charging the jury that inferred malice may also arise when the deed is done with a deadly weapon where evidence is presented that would reduce, mitigate, excuse, or justify the homicide.

**Ground Two:** Petitioner's Sixth and Fourteenth Amendment rights to the effective assistance of counsel were violated when trial counsel failed to object to the jury instruction that malice may be inferred from the use of a deadly weapon pursuant to *State v. Belcher*, 385 S.C. 598, 610, 685 S.E.2d 802, 809 (2009).

**Ground Three:** Petitioner's Sixth and Fourteenth Amendment rights to the effective assistance of counsel were violated when trial counsel failed to request instructions on involuntary manslaughter and possible accident.

(ECF No. 1-1 at 1-6).

## II. Discussion

In her Report, the magistrate judge determined that the issue raised in Ground Three is procedurally barred, and that Petitioner cannot not show cause and prejudice. (ECF No. 26 at 17-20). Petitioner timely filed objections. (ECF No. 29). However, Petitioner did not specifically object to the magistrate judge's finding that this claim was procedurally barred. In fact, he objects to the Report "in its entirety," *id.* at 3, and, while he raises complaints about the handling of this action, Petitioner has not made any objections addressing any specific portion of the Report. For example, Petitioner objects to "ECF No. 18," which is an order that the magistrate judge filed informing Petitioner that she would dismiss this action if Petitioner failed to respond to the Respondent's summary judgment motion. (ECF No. 18). In that order, the magistrate judge noted that she had previously warned Petitioner that pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), he needed to file an adequate response by November 26, 2018 (ECF No. 16), and she advised that if he failed to respond adequately, Respondent's summary judgment motion may be granted. (ECF No. 18 at 1-2). Petitioner then appears to argue that his response to the summary judgment should have been deemed timely and considered by the magistrate judge. (ECF No. 29 at 1-2, 3). It was. The magistrate judge granted Petitioner an extension (ECF No.

4

21), and Petitioner subsequently timely filed a response to Respondent's summary judgment motion (ECF No. 24), which the magistrate judge considered and specifically cites to in her Report (ECF No. 26 at 2, 17, 23).

Petitioner then objects to the fact that an *Anders* brief was filed on his behalf in his direct appeal and argues that he has been deprived of any judicial review. (ECF No. 29 at 2).[3] Finally, Petitioner argues that the PCR court erred in applying the holding in *Strickland* when there were judicial errors. *Id.* at 2-3.[4] Neither of these objections point to any error in the Report. Moreover, Petitioner's grounds for habeas relief were raised before the PCR court in the context of ineffective assistance of counsel (ECF No. 14-1 at 442), and the PCR court properly analyzed them under *Strickland*. Accordingly, Petitioner's objections are without merit. Therefore, the court has reviewed the Report for clear error.

**A. Ground One**

In Ground One, Petitioner contends that the trial judge erred in charging the jury that malice may be inferred by the use of a deadly weapon. (ECF No. 1-1 at 2). Respondent contends that federal habeas relief cannot be granted on this ground because Petitioner is complaining about a violation of state law and federal habeas relief is not available to correct errors of state law. (ECF No. 14 at 7-8). The magistrate judge agrees with Respondent, and recommends the court grant Respondent summary judgment on this ground. (ECF No. 26 at 21). The magistrate

---

[3]*See Anders v. California*, 386 U.S. 744 (1967). *Anders* requires that appointed counsel who seeks to withdraw because no nonfrivolous issues exist for review must submit a brief referencing anything in the record that arguably could support an appeal; a copy of that brief must be furnished to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct an independent and complete examination of the proceedings to determine if further review is merited. *Id.*

[4]To establish a claim of ineffective assistance, appellant must demonstrate that counsel's performance was deficient and that deficient performance was prejudicial to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1983).

5

judge also notes that this claim is procedurally barred from federal habeas review as it was not preserved at the trial level and not fairly presented to the South Carolina appellate courts. (ECF No. 26 at 21 n.4). The court agrees with the magistrate judge. Finding no clear error, the court adopts this part of the Report.

**B. Ground Two**

In Ground Two, Petitioner argues his counsel was ineffective for failing to object to the jury instruction that malice may be inferred from the use of a deadly weapon. (ECF No. 1-1 at 4). Petitioner contends that the instruction was improper pursuant to the holding in *Belcher*, 685 S.E.2d 802. In *Belcher*, 685 S.E.2d at 809, the South Carolina Supreme Court held a jury charge instructing that malice may be inferred from the use of a deadly is no longer good law in South Carolina where evidence is presented that would reduce, mitigate, excuse or justify the homicide.

In this case, the trial judge gave the following jury instruction on implied malice:

> Malice may be inferred from conduct showing a total disregard for human life. Inferred malice may also arise when the deed is done with a deadly weapon. A deadly weapon is any - - the article, instrument, or substance which is likely to cause death or great bodily harm.

(ECF No. 14-1 at 393). The PCR court found the jury charge which was given was appropriate and *Belcher* did not apply "because the facts of this case did not give rise to the lesser included charges of voluntary manslaughter, involuntary manslaughter, or the defense of accident." (ECF No. 14-1 at 507). He also noted that "[Petitioner] claimed complete innocence." *Id.*

In his motion for summary judgment, Respondent contends that the PCR correctly found that there was no evidence to reduce, mitigate, excuse, or justify the killing and, therefore, the holding in *Belcher* does not apply. (ECF No. 14 at 17). In his response, Petitioner argues that the court does not need any mitigation evidence because burden shifting instructions are unconstitutional. (ECF No. 24 at 16). Further, he contends that it is likely his conviction would

have been reversed on direct appeal because of mitigation evidence. *Id.* He points to testimony that after killing the victim he had "an astonished look on his face" and "did not look mad," and he contends that this evidence warranted an involuntary manslaughter charge. *Id.* at 11-12, 15.

The magistrate judge determined that Petitioner could not satisfy the *Strickland* test because there was not a substantial likelihood that the result of Petitioner's trial would have been different had the trial court not given the jury charge on implied malice. (ECF No. 26 at 23). She notes Petitioner's actions - confronting Brantley regarding racism, firing the gun multiple times at Brantley, and placing the gun to Brantley's head before shooting him - and concludes that the PCR court reasonably found the facts did not give rise to the lesser included charges of voluntary manslaughter or involuntary manslaughter or the defense of accident. *Id.* at 23-24.

At the PCR hearing, Petitioner's trial counsel was asked if it was part of his trial strategy to allow the inferred malice instruction on the use of the deadly weapon. *Id.* at 482. Trial counsel responded:

> I argued against that. I didn't think that was the law at the time. I have not had a chance to review the transcript. But when I was listening to you talk, I was basically going, that's not the law. I would have argued it; I should have argued it. The only problem is, by the time I would argue it, the jury would have heard it already. And bringing a jury back in to correct a mistake like that, especially when I've already done my best to convince them that this was not a murder, would highlight things I did not want highlighted.

*Id.* at 482-83. Trial counsel further stated:

> I thought I'd won the case. I thought that I had put enough reasonable doubt into the jury's mind that they would go with it not being murder. I do not remember if Mr. Howard and I discussed going for a lesser included. He had maintained [his] innocence the entire time. So, I don't recall why I did not further object or move for a mistrial.

*Id.* at 483-84.

Petitioner also testified at his PCR hearing. He repeatedly testified that he was innocent. (ECF No. 14-1 at 491, 497, 498, 499, 500). On cross-examination, the following colloquy

occurred:

> Q: Okay. And you're saying you're innocent because you didn't mean to kill [the victim]?
>
> A: I didn't kill anybody.
>
> Q: Okay. So, you're saying you didn't kill anybody.
>
> A: Right.
>
> Q: So, you were in the club that night? You're saying you weren't in the club that night?
>
> A: I never said that.
>
> Q: Okay. So, you're just saying you didn't pull the trigger?
>
> A: I didn't kill anybody.
>
> Q: Did you pull the trigger?
>
> A: I didn't pull the trigger, no. I didn't kill anybody. I didn't shot - - I didn't shot anybody.
>
> Q: Okay. So, you're arguing not that it was an accident, but that you didn't even - - you weren't there: you didn't pull the trigger; you didn't kill anybody.
>
> A; I didn't kill anybody that night.
>
> Q: Okay. So, would that have been what you told your attorney? Would that have been what you told your attorney?
>
> A: If he'd asked me did I kill anybody, I would have told him I didn't kill anybody.
>
> Q: Okay. And so, if he said we have a plea deal for voluntary manslaughter or involuntary manslaughter, you would have said, no, I didn't kill anybody.
>
> A: I - - exactly. I didn't kill anybody.

*Id.* at 498-99.

The court notes that before the PCR court Petitioner stated there was evidence to support a defense of accident based on trial counsel's argument to the jury and the testimony of one witness,

8

Wallace Mike, Jr., who described people as joking around at the bar. (ECF No. 14-1 at 462). First, trial counsel's arguments during closing argument are not evidence. *See, e.g., Jones v. United States*, No. 2:03-3861-18-DCN, 2006 WL 2038305, *4 (D.S.C. July 19, 2006). Second, Mike testified that he and the victim were playing pool and had been joking around. (ECF No. 14-1 at 239-241). He did not testify that Petitioner was joking around with them. *Id.* Before this court, Petitioner contends that there was evidence of involuntary manslaughter based on the witness who testified that he saw Petitioner leave the bar with an astonished look on his face after the shooting. (ECF No. 24 at 11). Petitioner argues that another witness, Claude D. Morris, testified that he saw Petitioner as he was leaving the bar after the shooting, and Petitioner had "an astonished look, a bug-eyed look on his face . . . [a] wild look. Not - - not his natural." (ECF No. 14-1 at 216). Reviewing the evidence presented at trial, an instruction on accident or involuntary manslaughter was not warranted.

Under South Carolina law, "involuntary manslaughter is (1) the unintentional killing of another without malice, but while engaged in an unlawful activity not naturally tending to cause death or great bodily harm; or (2) the unintentional killing of another without malice, while engaged in a lawful activity with reckless disregard for the safety of others. *Id.* at 101 (citing *Bozeman v. State*, 414 S.E.2d 144 (S.C. 1992)). Clearly, Petitioner by pointing a gun at someone while repeatedly pulling the trigger was engaged in an unlawful act tending to cause death or great bodily harm.[5] Accordingly, he was not entitled to an involuntary manslaughter instruction.

As for the defense of accident, under South Carolina law, "[a] homicide [caused by a gun] will be excusable on the ground of accident when (1) the killing was unintentional, (2) the defendant was acting lawfully, and (3) due care was exercised in the handling of the weapon."

---

[5]This conduct is considered unlawful under S.C. Code Ann. § 16-23-410 (pointing or presenting a loaded or unloaded firearm is a felony).

*State v. Chatman*, 519 S.E.2d 100, 102 (S.C. 1999). Petitioner was not acting lawfully, as discussed above, and he was not exercising due care in the handling of the gun. Therefore, as the magistrate judge concluded, Petitioner was not be entitled to an instruction on accident or involuntary manslaughter. Finding no clear error, the court agrees with the magistrate judge's finding that the PCR court's decision is not contrary to, nor an unreasonable application of, federal law. Accordingly, the court adopts the Report (ECF No. 26).

### III. Conclusion

After a thorough review of the Report and the record in this case pursuant to the standards set forth above, the court finds Petitioner's objections are without merit. Therefore, Respondent's Summary Judgment Motion (ECF No. 15) is **GRANTED** and the Petition is **DISMISSED with prejudice**.

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the instant matter, the court finds that Petitioner has fad to make "a substantial showing of the denial of a constitutional right." Accordingly, the court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
April 15, 2019